```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MADISON ACQUISITION GROUP, LLC,

                    Plaintiff,
                                            MEMORANDUM & ORDER
            -against-                       21-CV-5685(JS)(JMW)
LOCAL 259 UNITED AUTO WORKERS,
AFL-CIO and INTERNATIONAL UNION,
UNITED AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA, UAW,

                    Defendants.
----------------------------------X
```

APPEARANCES
For Plaintiff:      Christopher A. Smith, Esq.
                    Scott P Trivella, Esq.
                    Trivella Forte & Smith, LLP
                    1311 Mamaroneck Avenue, Suite 170
                    White Plains, New York  10605

For Defendants:     Jeremy E. Meyer, Esq.
                    Cleary, Josem & Trigiani LLP
                    325 Chestnut Street, Suite 200
                    Philadelphia, Pennsylvania  19106

SEYBERT, District Judge:

On October 20, 2021, to preserve the status quo, this Court issued an Order temporarily restraining Defendants from compelling arbitration under the parties' collective bargaining agreement and ordering Defendants to show cause why a preliminary injunction should not enter.  Upon consideration of the parties' submissions, and the arguments made at the show cause hearing held on November 16, 2021, the Court finds that Plaintiff has failed to meet its burden to obtain a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.  Accordingly, for

the reasons that follow, the Court DENIES Plaintiff's motion for a preliminary injunction.

## BACKGROUND

I.  Factual Background

Madison Acquisition Group, LLC d/b/a BMW of Southampton ("Plaintiff" or "MAG") owns an auto dealership located at 35 Montauk Highway, Southampton, New York 11968-4122 (the "Southampton Dealership") that employs mechanics, technicians, and service shop employees represented by Local 259 UAW, AFL-CIO ("Local 259").[1] (Smith Petition, Ex. D, ECF No. 8-4, ¶ 2, attached to Mot. for Temporary Restraining Order, ECF No. 8.)  Local 259 also represents employees at two other dealerships -- the "Jaguar Dealership" and the "Chrysler Dealership" -- that Local 259 claims, together with the Southampton Dealership, "constitute a family of companies" under the "common control" of Jonathan Sobel, although it concedes that it "does not know the precise corporate structure between the various entities and holding companies." (Defs. Opp'n, ECF No. 13, at 3; Schneck Aff., Ex. A, ECF No. 13-1, ¶ 4, attached to Defs. Opp'n.)  According to Defendants, the Local 259 employees at the Jaguar, Chrysler, and Southampton Dealerships all participate in the same 401(k) plan.  (Defs. Opp'n at 3; Schneck

---

[1] Plaintiff also names as Defendant the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America, UAW.

2

Aff. ¶ 9.)

The terms and conditions of employment for the technicians and mechanics at the Southampton Dealership are governed by a collective bargaining agreement ("CBA") between Local 259 and MAG. (CBA, Ex. A, ECF No. 13-2, attached to Defs. Opp'n.)  Central to the parties' dispute is Article 36 of the CBA, which states as follows:

> The Employer [MAG] shall provide a 401(k) Plan on behalf of all unit employees.  Such plan shall provide for unit employee contributions only.  Notwithstanding however, in the event the Employer were to make contributions on behalf of any non-bargaining unit employee or any other employee in another bargaining unit employed by the Employer equal contributions shall be made on behalf of all Local 259 bargaining unit employees enrolled in the plan.  Upon written request by the Union, the Employer shall provide any and all payroll documentation (i.e., payroll register) for an in-camera review by a party to be determined by the Union, to determine compliance with this Article.

(CBA, Ex. A, Art. 36.)  Thus, under Article 36, MAG must provide each of its Local 259 employees with a 401(k) plan to which that employee can make contributions.  However, in the event MAG "were to make contributions" to its non-union employees or other union employees,[2] it would be obligated to make equal employer contributions to its Local 259 employees.

---

[2] According to the testimony of Jay Decker, General Manager of the Southampton Dealership, MAG does not employ members of any other union at the Southampton Dealership.

3

Further, Article 9 of the CBA contains a grievance and arbitration procedure that applies to "[a]ny dispute concerning the interpretation or application of the terms of the [CBA] or any dispute between the parties." (Id. at Art. 9.A.)  Pursuant to Article 9, in the event the parties are unable to resolve the dispute internally, "the dispute shall be submitted to arbitration," and if the parties cannot agree to an arbitrator, then "the matter shall be submitted to the American Arbitration Association," whose "findings, decisions and awards shall be final, binding, and conclusive on both of the parties." (Id. at Art. 9.B.1.)  Article 9 further provides that "[n]o arbitrator shall have any power to add to, subtract from, alter, change, or modify any term of this Agreement." (Id. at Art. 9.B.2.)

II. Procedural History

Sometime in August 2021, it came to the attention of Brian Schneck, Local 259's President, that the contracts governing its members' employment at the Jaguar and Chrysler Dealerships committed those employers, not MAG, to make contributions to their Local 259 employees' 401(k) plans.  Local 259 conferred with Plaintiff's counsel and expressed its position that this fact triggered Plaintiff's obligation under Article 36 to make contributions to the Local 259 employees at the Southampton Dealership.  Unable to resolve the dispute internally, on September 21, 2021, Local 259 notified Plaintiff of its intent to schedule

4

an arbitration before the American Arbitration Association (the "AAA") to resolve the parties' dispute regarding the scope of Plaintiff's obligations to contribute to the 401(k) plan pursuant to the CBA. (Not. Intent to Arb., Ex. D, ECF No. 13-5, attached to Defs. Opp'n.) In response, Plaintiff sought a temporary restraining order in New York State Court enjoining Defendants from compelling arbitration of the matter; however, that application was denied for insufficient notice. (See State Action Order to Show Cause, Ex. E, ECF No. 8-5, attached to Mot. for Temporary Restraining Order.)

After removal,[3] on October 20, 2021, this Court issued a temporary restraining order and accompanying order to show cause, which temporarily enjoined Defendants from proceeding to arbitration "relating to the issues raised in the Notice of Intent to Arbitrate or relating to any request for an arbitrator to determine the bargaining unit issues or status of employment of any individuals other than the workers located at the Southampton Auto Dealership." (Order, ECF No. 11.) Notably, the Court found Plaintiff had shown likelihood of success on its claim that the dispute involves bargaining unit composition issues over which the National Labor Relations Board ("NLRB") has exclusive jurisdiction, rendering arbitration under the CBA inappropriate.

---

[3] The Court has jurisdiction over this matter pursuant to 29 U.S.C. § 185.

5

(Order at 3.)

As directed, the parties submitted briefs and appeared for an in-person hearing on Plaintiff's motion for a preliminary injunction. (See Min. Entry, ECF No. 22.) Defendants also filed a pre-motion conference request seeking leave to dismiss the case, which remains pending. (ECF No. 16.)

### STANDARD FOR PRELIMINARY INJUNCTION

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 114 (2d Cir. 2006); Jefferson v. Soe, No. 17-CV-3273, 2017 WL 2881138, at *2 (E.D.N.Y. July 6, 2017). A preliminary injunction is "an extraordinary and drastic remedy which should not be routinely granted." Jefferson, 2017 WL 2881138, at *2 (quoting Buffalo Forge Co. v. Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981)). As a result, to obtain a preliminary injunction, the movant must make carry its burden by a "clear showing." Id. at *3 (quoting Moore v. Consol. Edison Co. of N.Y., 408 F.3d 506, 510 (2d Cir. 2005) (citation omitted)).

APPLICATION

To begin, it is important to clarify what this case <u>is not</u> about. The issue in this case <u>is not</u> whether Plaintiff's Local 259 employees are entitled to employer contributions to their 401(k) plans. Rather, the only issue before the Court is whether that question must be submitted to the AAA pursuant to Article 36 of the CBA. <u>AT&T Techs., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 649-50 (1986) ("[T]he union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." (citation omitted)); <u>see also</u> <u>Henry Schein, Inc. v. Archer & White Sales, Inc.</u>, 139 S. Ct. 524, 529 (2019).

With this in mind, the Court turns to whether Plaintiff makes a "clear showing" that the requirements to obtain a preliminary injunction have been established.

I. <u>Likelihood of Success on the Merits</u>

Whether Plaintiff can demonstrate likelihood of success on the merits of its claim that this dispute is not subject to

arbitration under the CBA must be resolved according to well-settled principles regarding arbitration disputes. The Court first sets forth these principles before addressing the parties' arguments.

A. Applicable Law

First, under federal law, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 392 (2d Cir. 2011) (quoting AT&T Techs., Inc., 475 U.S. at 648). Thus, the Court first "resolve[s] 'the question of the very existence' of the contract embodying the arbitration clause." Id. (quoting Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 26 (2d Cir. 2002)).

Second, absent a clear and unmistakable indication to the contrary in the arbitration agreement, the Court, not the arbitrator, must resolve "whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance." AT&T Techs., Inc., 475 U.S. at 649. These so-called gateway "questions of arbitrability" are "limited," however. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002). Under controlling caselaw, gateway questions of arbitrability include "whether the parties are bound by a given arbitration clause as well as disagreements about whether an arbitration clause in a concededly binding contract applies to a

8

particular type of controversy." Republic of Ecuador, 638 F.3d at 393 (quoting Howsam, 537 U.S. at 84). At the same time, "'procedural' questions which grow out of the dispute and bear on its final disposition" are not questions of arbitrability. Howsam, 537 U.S. at 84; Republic of Ecuador, 638 F.3d at 393-94. Accordingly, procedural questions, such as "allegations of waiver, delay, or a like defense to arbitrability," are "presumptively not for the judge, but for an arbitrator, to decide." Howsam, 537 U.S. at 84 (first quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); and then quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (2002)).

Last, the Court must address the arbitrability of this dispute "with healthy regard for the federal policy favoring arbitration." Republic of Ecuador, 638 F.3d at 393 (quoting Moses H. Cone, 460 U.S. at 24.) Such a presumption is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of "any dispute concerning the interpretation or application of the terms of the [CBA] or any dispute between the parties." Cf. AT&T Techs. Inc., 475 U.S. at 650. "This presumption of arbitrability for labor disputes recognizes the greater institutional competence of arbitrators in interpreting collective-bargaining agreements, 'furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed

9

objectives in pursuing collective bargaining.'" Id. (citations omitted).

B.  Application

Applying the foregoing principles, the Court finds that Plaintiff cannot establish likelihood of success on the merits.

To begin, there can be no dispute that the parties signed a CBA that contains a valid arbitration agreement. MAG is a party to the CBA with Local 259, and Article 9 of the CBA contains a grievance and arbitration procedure that applies to "any dispute concerning the interpretation or application of the terms of the [CBA] or any dispute between the parties." The parties do not raise any issue as to contract formation. To the contrary, according to the record, the CBA was the product of arms-length negotiations between two sophisticated parties.

Plaintiff argues that "[t]here is a gateway question for the Court to decide," namely, "whether the parties agreed to submit to arbitration the issue of whether employees at the Jaguar and Chrysler dealerships are the Plaintiff's employees." (Pl. Reply at 2.) Essentially, Plaintiff asks the Court to interpret Article 36 of the CBA -- according to Plaintiff's interpretation, the fact that Local 259's employers at the Jaguar and Chrysler dealerships make employer contributions does not trigger MAG's contribution obligations under Article 36. (Id.) Rather, MAG's employer-contribution obligations under Article 36 are triggered only where

10

MAG, and not a separate employer owned by a different corporate entity, makes contributions to its non-union employees. (Id.)

The Court disagrees that there are any gateway questions of arbitrability for it to decide here. In the first instance, Plaintiff's request would entangle the Court in the merits of this dispute, where it "ha[s] no business." Henry Schein, Inc., 139 S. Ct. at 529; AT&T Techs., Inc., 475 U.S. at 650. As noted supra, "even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator." AT&T Techs., Inc., 475 U.S. at 650-51.

Second, to the extent argued, there are no alter ego issues before the Court. It is true that whether a party is an "alter ego and therefore bound by the arbitration clause contained in [its alter ego's] CBA is exactly the type of 'gateway' issue that is a 'question of arbitrability' for this Court to decide." Loc. Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. A&M Heating, Air Conditioning, Ventilation & Sheet Metal, Inc., 314 F. Supp. 2d 332, 344 (S.D.N.Y. 2004) (citing Truck Drivers Local 807, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Carey Transp., Inc., 816 F.2d 82, 88 (2d Cir. 1987)). However, unlike in A&M Heating, where the union sought to arbitrate a dispute with a distinct company that was allegedly the

11

alter ego to the CBA signatory, here, MAG is a signatory to the CBA.[4]

Last, consistent with the federal policy favoring arbitration, the Court must resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration, whether the problem at hand is the construction of the contract language itself . . . ." Moses H. Cone, 460 U.S. at 24-25; accord Hartford Accident & Idem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001). This is especially true here given (1) the breadth of the arbitration provision at issue in this case, and (2) the fact that it involves a labor dispute. See AT&T Techs. Inc., 475 U.S. at 650.[5]

---

[4] Plaintiff also points to the limiting language contained in Article 9 of the CBA, which provides that "[n]o arbitrator shall have any power to add to, subtract from, alter, change, or modify any term of this Agreement." Although parties may, by clear intention, "exclude[e] certain claims from the scope of their arbitration agreement," the cited language falls short of a "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Hartford Accident & Idem. Co., 246 F.3d at 227 (quoting AT&T Techs. Inc., 475 U.S. at 650). Whether this provision limits the arbitrator's authority to adopt Defendants' interpretation of Article 36 is for the arbitrator to decide.

[5] Plaintiff also asserts that the NLRB has exclusive jurisdiction over this dispute, arguing Defendants' attempt to apply the CBA between Local 259 and the owners of the Chrysler and Jaguar Dealerships to MAG's Local 259 employees constitutes a "representational matter." (Pl. Reply at 4.) At this juncture, the Court is unable to agree. In support of this argument, Plaintiff cites one case: Sheet Metal Workers' Int'l Ass'n, 322 NLRB 877 (1997). But in that case, the employer attempted to apply the parties' CBA to two non-unit employees. Id. at 878. However,

12

II. <u>Irreparable Harm & the Public Interest</u>

Because the Court has concluded that Plaintiff has failed to establish likelihood of success on the merits, it finds it unnecessary to reach the issue of irreparable harm or whether an injunction is in the public interest. <u>Sadowsky v. City of New York</u>, 732 F.2d 312, 316 (2d Cir. 1984); <u>see also</u> <u>Tait v. Accenture PLC</u>, No. 18-CV-10847, 2019 WL 2473837, at *3 (S.D.N.Y. June 13, 2019).

<u>CONCLUSION</u>

Accordingly, Plaintiff's motion for a preliminary injunction (ECF No. 8) is DENIED.

Further, within ten days of this Memorandum & Order, the parties shall advise the Court, in writing, how they intend to proceed in this action, including whether Defendants intend to renew their request to file a motion to dismiss this action.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: November  18 , 2021
       Central Islip, New York

---

here, all employees are Local 259 members, and Local 259 is not endeavoring to extend its jurisdiction to represent some other group of employees.

13